**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CINCINNATI, OHIO**

| | | |
|---|---|---|
| **F. HARRISON GREEN,** | : | **CASE NO. 1:19-cv-00014** |
| | : | |
| **Plaintiff,** | : | **Judge Timothy S. Black** |
| | : | |
| **v.** | : | |
| | : | **MOTION TO** |
| **TIMOTHY ALLEN MASON,** ***et al.*****,** | : | **DISMISS COMPLAINT** |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Gary J. Bergenske ("Bergenske") and Jerry G. Gantt ("Gantt") hereby respectfully move this Court to dismiss all of Plaintiff F. Harrison Green's ("Plaintiff") claims against them. This motion is supported by the attached memorandum.

Respectfully submitted,

/s/ John C. Greiner
John C. Greiner (0005551)
*Attorney for Defendant Bergenske and Defendant Gantt*

GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 651-3836
E-mail: jgreiner@graydon.law

*Of Counsel:*

GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-6464
Fax: (513) 651-3836

## I. INTRODUCTION

There is no cause of action for an employee whose boorish, surreptitious behavior has been criticized by his employer and led to his termination. There is no cause of action for an employee whose colleagues have expressed concern over that conduct. And there *certainly* is no cause of action when the plaintiff is not even an employee – but instead a *volunteer*.

In his Complaint, Plaintiff urges the Court to hold Defendants Mason, Bergenske, and Gantt, officers of the various Shriners governing boards (including the Board of Governors, Board of Directors, and Board of Trustees), each his superior in the organization, liable for voicing concerns *among themselves* about Plaintiff's behavior toward fellow board members and decision-makers for the Cincinnati Hospital. It is Plaintiff's conduct, and Plaintiff's conduct alone, that led to his removal from his role on the local board.

Plaintiff's Complaint does not support a cause of action. Plaintiff brings claims for intentional infliction of emotional distress, negligent infliction of emotional distress, false light, slander, and retaliation. Neither emotional distress claim should survive, because he has not pled any such tortious conduct. Nor has he pled physical injury of a bystander, which is a necessary element for the negligent infliction of emotional distress claim.

As to his false light and slander claims, both require a false statement. Not only does Plaintiff fail to identify any false statements, he fails to identify any third-person to whom they were made, or that these communications were unprivileged.

Plaintiff has also failed to state a retaliation claim. There is no tort claim for retaliation under Ohio law.

**A. Statement of Facts.**

Plaintiff, and Defendants Gary J. Bergenske ("Bergenske"), Jerry G. Gantt ("Gantt"), and Timothy Allen Mason ("Mason") are all members of the larger Shriners organization. *Complaint*, ¶¶ 6-9.

Mason is an officer of the Shriners Hospitals for Children and serves as the the Chairman of the Board of Governors of the Shriners Hospitals for Children at Cincinnati, Ohio ("Cincinnati Hospital"). *Id*., ¶ 7. Bergenske is an officer of Shriners International and Shriners Hospitals for Children and at the relevant time served as the Imperial Potentate and President of Shriners International, as well as the Chairman of the Board of Directors and a member of the Board of Trustees of Shriners Hospitals for Children. *Id*., ¶ 8. Gantt is an officer of Shriners International and Shriners Hospitals for Children, and serves as the President of the Board of Directors and Chairman of the Board of Trustees. *Id*., ¶ 9.

Plaintiff, an attorney, was elected in July of 2016 to serve as a Member of the Board of Governors of Shriners Hospitals for Children of Cincinnati, Ohio for a three-year term beginning January 1, 2017. *Id*., ¶ 15. He was then appointed to serve as Vice Chairman of the Research Committee and as a member of the Finance and Budget Committee for the Cincinnati Hospital. *Id*., ¶ 16.

On February 5, 2018, Mason was appointed Chairman of the Board of Governors of the Cincinnati Hospital by the Board of Directors and Board of Trustees to Shriners Hospitals for Children, the Colorado Corporation ("Joint Boards"). *Id*., ¶ 17-18.

On February 6, 2018, Plaintiff was elected to serve as Vice Chairman of the Board of Governors of the Cincinnati Hospital. *Id*., ¶ 19.

Prior to these appointments, however, in January 2018, the Joint Boards announced their decision to close the Cincinnati Hospital. *Id*., ¶ 20. The following month, in February 2018, the Joint Boards announced that instead of closing the Cincinnati Hospital, they would transition to a smaller "foot print" within the facility, or relocate to a larger hospital and operate from within. *Id*., ¶ 21.

To assist in the decision-making to determine the fate of the Cincinnati Hospital and three other hospitals, the Joint Boards hired a consulting group in March of 2018. *Id*., ¶ 22. Upon motion at the March 28, 2018 Cincinnati Hospital Board of Governors meeting, Mason appointed four board members to form a committee to prepare a proposal for the transition. *Id*., ¶ 26.

On April 25, 2018, the committee presented the proposal to the Executive Committee and Staff. *Id*., ¶ 29. Mason, as Chairman, exercised his discretion, and cut the presentation short. *Id*. In response, Plaintiff raised his voice, and began to talk over Mason, demanding the committee continue. *Id*., ¶ 30.

The same day, during a full meeting of the Board of Governors, the committee presented its proposal, this time including a resolution it intended to present to the Imperial Session of Shriners International and the Shriners Hospitals for Children, which requested authority for the Cincinnati Hospital to maintain its status as a preeminent facility treating pediatric burn victims and offering reconstructive surgery. *Id*., ¶ 31. Mason, as Chairman, and having consulted with the Chairman of the Jurisprudence Committee of the Imperial Session, advised that the resolution was non-compliant with §506.7(a) & (b) of the bylaws of Shriners Hospitals

for Children. *Id.*, ¶ 32. Nevertheless, Mason suggested that the proposal be submitted to the consultants for consideration. *Id.*, ¶ 34.

On May 7, 2018, Plaintiff, disagreeing with Mason's assessment, circumvented the Chairman's authority, and directly contacted one of the consultants, Dr. Edward Levine, M.D. *Id.*, ¶ 35. On May 9, 2018, Dr. Levine responded to Plaintiff, stating he did not want to be "caught in the middle" of these conversations, and directed him instead to Scott Laubisch, John McCabe, and Jerry Gantt. *Id.*, ¶ 36, Exhibit B.

By letter dated May 22, 2018, Bergenske, as Chairman of the Board of Directors, SHC, and Gantt, as Chairman of the Board of Trustees, SHC, removed Plaintiff from the Board of Governors ("May 22 letter"). *Id.*, ¶ 37, Exhibit C. In the May 22 letter, Gantt and Bergenkse cited several reasons for Plaintiff's termination, including his "inability to work as a team member" and his "disregard for the directions from the Chairman." *Id.*

Plaintiff's Complaint also includes reference to a May 23 Board of Governor's meeting. *Id.*, ¶ 69. He claims that statements made during that meeting described Plaintiff as "not fit to be a member of the Board of Governors and to serve as Vice Chairman of the Shriners Hospital for Children of Cincinnati." *Id.*

Finally, in his Complaint, Plaintiff states that "Defendants made the statements by publishing through statements through [sic] a community of membership in excess of 2,000 individuals." *Id.*, ¶ 70.

# MEMORANDUM

## II. THE COURT MUST DISMISS PLAINTIFF'S COMPLAINT

### A. Rule 12(b)(6) Standard.

Plaintiff's Complaint is devoid of any facts to support his slander, false light, intentional/negligent infliction of emotional distress, and retaliation claims. In fact, Plaintiff has failed to plead the elements of several of these claims, let alone facts in support. Plaintiff's allegations, therefore, cannot survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

A pleading must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). However, a plaintiff's complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Id.* For a claim to be plausible, a plaintiff must plead facts that are more than just "merely consistent with a defendant's liability." *Id.* And while a court must accept all factual allegations within a complaint as true, the same does not apply to legal conclusions. *Id.* Specifically, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. The Court Must Dismiss Plaintiff's False Light and Slander Claims.

Plaintiff's claims for false light and slander fail for many of the same reasons. As an initial matter, all communications Plaintiff has identified are protected under the common interest privilege. But in any event, his pleading is deficient, as he fails to identify any false statements made about him to third parties. And the only statements Plaintiff *does* identify

(which he alleges are shared within the confidence of protected communications, and not third-parties), are either true, or not actionable.

To establish a claim for defamation, a plaintiff must show that: (1) the defendant made a false statement of fact, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77. The element of publication "is an essential element to liability for defamation." *Hecht v. Levin*, 66 Ohio St.3d 458, 460, 613 N.E.2d 585 (1993). A defendant publishes a statement when he communicates a false and defamatory statement to a person or persons other than the person defamed. *Id*.

Similarly, to prevail on a false light claim, the plaintiff must prove: "(a) the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 473, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 61.

Generally, "the same core reasons that necessitate dismissal of [a] defamation claim [may] inform disposition of [a] false light invasion of privacy claim." *Murray v. HuffingtonPost.com*, 21 F.Supp.3d 879, 889 (S.D. Ohio May 12, 2014) (citing *Sturdevant v. Likley*, 9th Dist. Medina No. 12CA0024-M, 2013-Ohio-987 (Mar. 18, 2013)).

**1. Any purported publication was privileged.**

All instances of publication Plaintiff describes in his Complaint are privileged. The common interest privilege permits free communication among members of organizations

sharing a common interest. *Gray v. General Motors Corp.*, 52 Ohio App.2d 348, 370 N.E.2d 747 (1977) (Communications between fellow employees, when made in good faith, are privileged); *see also Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975) ("A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it.") Communications between members or employees of Shriners, even those that are critical of a board member, are protected.

A communication is qualifiedly privileged where: (1) it is made in good faith; (2) there is an interest to be upheld; (3) the statement is limited in its scope and purpose; (4) the statement was made on the proper occasion; and (5) publication was made in a proper manner and to proper parties only. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Building & Constr. Trades Council*, 73 Ohio St.3d 1, 8, 651 N.E.2d 1283 (1995); *Hahn*, 43 Ohio St.2d at 244. "The purpose of a qualified privilege is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty." *Mallory v. Ohio University*, 10th Dist. Franklin No. 01AP-278, 2001-Ohio-8762 (citing *Hahn*, 43 Ohio St.2d at 246).

Plaintiff has failed to allege that *any* of the alleged communications were unprivileged. *Bornhorst*, 513 F.3d at 522. This, alone, is grounds for dismissal. *Goff v. Robertson*, 1:14 CV 880, (N.D. Ohio Nov. 17, 2014) (dismissing plaintiff's slander claim for failure to allege that the allegedly slanderous statements were not a privileged publication made to a third party); *see also Bielozer v. City of North Olmsted*, 1:14 CV 1160 (N.D. Ohio March 5, 2015) (Failure to set forth

facts demonstrating that each allegedly actionable statement was not privileged will result in dismissal.).

Though Plaintiff has failed to identify precisely what was said about him, he has alleged that these purportedly false statements are substantively tied to those appearing in the May 22 letter and made at the May 23 meeting. *Id*., ¶ 69 (referencing the May 22 letter and the May 23 meeting); *Id*., ¶ 75 (alleging that Defendants "spoke words describing Plaintiff Green's complained of conduct"). These statements are limited in scope, and clearly made with an interest to be upheld – that interest being success of the Shriners organizations.

Finally, Plaintiff describes only communications made to members and employees of Shriners. For example, the statements made in the May 22 letter were made by Defendants Gantt and Begenske, and made to Plaintiff himself. *Complaint,* ¶ 37. The conduct described therein was shared by Defendant Mason to Defendants Gantt and Bergenske. *Id.,* ¶ 38. The statements allegedly made at a May 23 meeting, were made during a Board of Governors meeting. *Id.,* ¶ 69. Finally, Plaintiff describes communications had "in the presence and hearing of third persons" at the hospital. *Id.,* ¶ 75. Given that Plaintiff does not identify those "third persons," this Court cannot determine whether they are employees (making these communications protected), or patients, or otherwise. Having not pled as much, Plaintiff has not stated a claim for slander.

**2. Plaintiff fails to allege any actionable statements.**

Plaintiff's false light claim rests upon the statements made in the May 22 letter, and statements purportedly made during a May 23 meeting. Meanwhile, Plaintiff's slander claims appear to arise from statements purportedly made about the averments contained in the May 22

letter. Plaintiff fails to identify the statements made at a May 23 meeting and those made in reference to the May 22 letter. Having not identified these statements, the Court cannot determine whether they are actionable, and therefore Plaintiff has not stated a claim showing that he is entitled to relief pursuant to Fed. R. Civ. P. 8(a)(2). To the extent Plaintiff has alleged the statements appearing in the May 22 letter to support either a false light claim, or a claim for slander, these statements are either not actionable, or they are substantially true.

**a. *Plaintiff has failed to identify allegedly defamatory statements, and her claims for defamation and false light are deficient as a matter of law.***

"Under Ohio law, 'it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not.'" *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632 (6th Cir. 2015), quoting *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E.2d 666 (1983). "Expressions of opinion[,]" as opposed to statements of fact, "are generally accorded absolute immunity from liability under the First Amendment." *Scott v. News-Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986). The Ohio Supreme Court has held that in determining "whether a statement constitutes protected opinion or actionable fact, courts should consider the totality of the circumstances, including factors such as: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared." *Bentkowski v. Scene Mag.*, 637 F.3d 689, 693-94 (6th Cir. 2011) (internal quotation marks omitted) (citing *Vail v. The Plain Dealer Publ'g Co.*, 72 Ohio St. 3d 279, 282, 649 N.E.2d 182 (1995)).

A false light invasion of privacy claim requires a false statement of fact. *Boulger v. Woods*, 306 F. Supp.3d 985, 1004-1005 (S.D. Ohio Jan. 24, 2018), quoting *Welling*, 2007-Ohio-2451, ¶ 52;

*see also Roe v. Heap*, 10th Dist. Franklin No. 03AP-586, 2004-Ohio-2504, ¶ 106 (no cognizable false light invasion of privacy claim where "statements forming the basis for the alleged invasion of privacy were . . . protected statements of opinion not susceptible of a determination as to their truth or falsity."). The statements must be verifiably false, as "essential to both a false light privacy claim and a defamation claim is a determination that 'the matter published concerning the plaintiff is not true.'" Restatement (Second) of Torts § 652E, comment a.

"Under the first factor, this Court must review each alleged actionable statement and 'determine whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications.'" *Huffingtonpost.com, Inc.*, 21 F.Supp.3d 879, 885 quoting *Bentkowski*, 637 F.3d at 694 (citations omitted). This analysis entails consideration of "the common usage or meaning of the allegedly defamatory words themselves." *Wampler v. Higgins*, 93 Ohio St.3d 111, 127, 752 N.E.2d 962 (2001). Thus, it is imperative that the Plaintiff identify the allegedly false statement.

Turning first to Plaintiff's false light claim, Plaintiff alleges that statements made during the May 23 meeting were highly offensive and that "they" (presumably, Defendants) described Plaintiff as "not fit" to serve on the as a member of the Board of Governors. *Complaint*, ¶ 69. Plaintiff does not state what statements were made in describing him as "not fit," nor does he allege that Defendants called him "not fit." He doesn't state to whom the statement was made, nor does he describe the substance of the conversation, and the context in which any such statement appeared. He has effectively made it impossible for the court to determine whether the statement is actionable.

Turning then to Plaintiff's slander claim, he again fails to identify the purportedly false statement. In paragraph 75 of the Complaint, Plaintiff states: "[Defendants] in the hearing of third persons at Shriner's Hospitals for Children of Cincinnati and subsequent occasions, written[sic] or spoke words describing Plaintiff's complained of conduct was his own doing, knowing said statements to be false." But Plaintiff has not identified the statements except to say that the "complained of conduct" (presumably the conduct described in the May 22 letter) "was [Plaintiff's] own doing." But this allegation does not make sense. Of course Plaintiff's conduct was "his own doing" – who's "doing" could his conduct be, besides his own? If Plaintiff means to allege that the *result*, that is, his termination, was "his own doing," this is a matter of perception, and is not verifiably true or false. It simply cannot support a claim for slander.

Given that Plaintiff has not provided the substance of any statements besides those appearing in the May 22 letter, this court could not begin to determine whether any other statements are actionable or not. Accordingly, Plaintiff has failed to state a claim "plausible on its face" and Plaintiff's slander claim and false light claims must be dismissed as a matter of law.

**b.** ***The statements appearing in the May 22 letter are either not actionable or they are true.***

To the extent that Plaintiff claims that the statements appearing in the May 22, 2018 letter are either slanderous, or support a claim for false light, they are not actionable under either theory. The following statements appear in the May 22, 2018 letter:

- Inability to work as a team member with the Chairman and executive staff;
- Disregard for the directions from the Chairman;

- Disrespect to the Chairman and other board members;
- Misrepresentation of the By-laws and the Hospital Rules and Regulations to other Board Members;
- Not accepting as a personal duty the responsibility to remain informed on important and critical issues affecting the Hospital;
- Engaging in unauthorized meetings to discuss the future of the hospital with staff members;
- Lobbying staff members for support of an ill-conceived plan for the hospital's future, after being advised that said plan is in violation [to] the SHC Colorado Corporation by-laws;
- Without the consent of the Board of Governors or the Chairman sending an email to Dr. Levine of the McKinsey Group to push the ill-conceived plan onto the agenda of The McKinsey Group;
- Violated responsibility to the Board of Governors and the Board of Trustees for efficient management and operation of its Hospital.

Statements that Plaintiff has shown an "inability to work as a team member," "disregard for the directions from the Chairman," and "disrespect to the Chairman and other board members" are matters of perception and are simply not actionable. Statements that Plaintiff is responsible for "misrepresentation of the By-laws," "not accepting" his responsibility to "remain informed," "lobbying staff members" and violating responsibilities for "efficient management," are not verifiably true or false. For these reasons, none of these statements are actionable.

The remaining statements are substantially true. "[T]ruth isn't hard to find in Ohio; the Sixth Circuit calls it a 'low threshold.'" *Croce*, 345 F.Supp.3d at 982-983, quoting *Susan B. Anthony List*, 779 F.3d at 633. "All that's needed is either ambiguity, some truth, or 'that the 'gist' or 'sting' of the statement is substantially true.'" *Id.* A "statement isn't false enough" unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.*

Plaintiff establishes that he did, in fact, email Dr. Levine, and he included that email as an exhibit to his Complaint. *Complaint*, ¶ 35. Moreover, emailing Dr. Levine could be construed as "engaging in unauthorized meetings." Thus, these statements aren't actionable either.

As not one of the May 22 statements is actionable, Plaintiff's claims for defamation and slander should be dismissed as a matter of law.

**3. Plaintiff fails to plead (and cannot prove) that any allegedly false statements were published to a third party, and certainly not the public at large.**

Plaintiff's Complaint fails to identify a single third party to which any statement was made, let alone that a single statement garnered any publicity, and his slander and false light claims must be dismissed.

For his slander claim, Plaintiff must allege "an unprivileged publication to a third party." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008). "A false light claim requires more; it requires publicity." *Croce*, 345 F.Supp.3d at 994. Publicity means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.,* quoting *Welling,* 2007-Ohio-2451, ¶ 53. A defendant is only liable for a false light claim when "the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person." *Mann,* 2010-Ohio-3963, ¶ 13-14. But there is no such allegation here.

Plaintiff alleges that Mason, Gantt and Bergenske "in the presence and hearing of third persons at Shriners Hospital for Children of Cincinnati… written[sic] or spoke words describing Plaintiff's Green's complained of conduct was his own doing, knowing said statements to be

false." *Complaint*, ¶ 75. But this reference to "third persons" is short of pleading standards, and the allegation is devoid of factual support to salvage the claim. *Golio v. Adena Health System*, No. 2:11-cv-00757 (S.D. Ohio April 23, 2012) (Claim for slander dismissed where plaintiff failed to identify the statement made by defendants to a third party, contained no factual assertion about who made the alleged statement, to whom it was made, or when it was made.); s*ee also Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (Conclusory statements, unsupported by fact, do not meet pleading standards). Having failed to identify any third party, this allegation falls short of Fed. R. Civ. P. 8(a)(2) pleading standards, and thus fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Similarly, statements contained in the May 22 letter, and any purported statements made at the May 23 meeting cannot support a false light claim, because a false light claim requires that the false statement be communicated to the public at large. *Croce*, 345 F.Supp.3d at 994, quoting *Welling*, 2007-Ohio-2451, ¶ 53. Plaintiff alleges the following:

> 37. On May 22, 2018 Plaintiff received an email from Defendants Gantt and Bergenske removing him as Vice Chairman and Board of Governors Member. (See Exhibit C attached hereto.)
>
> * * *
>
> 70. Defendants made the statements by publishing through statements through a community of membership in excess of 2,000 individuals.
>
> 71. Defendants knew of the falsity of the statements or acted in reckless disregard as to the truth of the statements and the false light in which Plaintiff Green would be placed by publication of the statements found in public records and available via internet searches.

At no point does Plaintiff allege that the May 22 letter, or the statements contained therein, were published online, in a newsletter, or in any other fashion where its contents would be communicated with those 2,000 members. The only reasonable inference drawn from

Plaintiff's allegations is that news of his removal contained in the May 22 letter was not published. Having pled no facts supporting his conclusion that the statements were not published, Plaintiff's false light claim falls short of pleading standards.

**C. This Court Must Dismiss Plaintiff's Emotional Distress Claims**

A board dispute, even one resulting in a member's removal, does not cause actionable emotional distress. Plaintiff makes no allegation to suggest as much, nor does he provide any factual support. In addition, Plaintiff's claim for negligent infliction of emotional distress is not applicable to the facts presented in Plaintiff's Complaint.

**1. Plaintiff fails to establish conduct which is extreme and outrageous.**

Plaintiff's allegations stem from statements purportedly made by Defendants about Plaintiff describing his conduct toward fellow board members. Aside from the fact that Plaintiff has failed to state what, exactly, these statements were, he does not state who these statements were made to (if anyone), nor does he provide any facts to support that this conduct was "extreme and outrageous."

A plaintiff claiming intentional infliction of emotional distress must establish the following: (1) the actor either intended to cause emotional distress or knew or should have known the actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community;" (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff is so serious and of a nature that "no reasonable man could be expected to endure it." *Garrison v. Bobbitt*, 134 Ohio App.3d 373, 378-379, 731 N.E.2d 216 (1999).

Aside from the fact that Mr. Green is no more than a volunteer, an Ohio *employer* is not liable for intentional infliction of emotional distress by terminating the employee. *Foster* v. *McDevitt*, 31 Ohio App.3d 237, 511 N.E. 2d 403 (1986). In any event, courts have refused to deem more egregious conduct as actionable. For instance, it was not "extreme and outrageous" when an employer yelled at an employee and "barked" at the employee at a company meeting. *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 48-49 (8th Dist.). It was not "extreme and outrageous" when an employer yelled at and berated the employee in front of others on numerous occasions, the employer falsely accused the employee of causing problems and stealing money, and called the employee names like "moronic and uneducated." *Smith v. Lebanon City Schools*, 12th Dist. Warren No. CA99-02-024 (Nov. 8, 1999). If this conduct has not been considered actionable by courts, the conduct described in the Complaint certainly does not meet this threshold.

Plaintiff describes the harm caused to him as "shock, embarrassment, and shame" as a result of the "statements [Defendants] recklessly made about Plaintiff." As the Ohio Supreme Court held in *Yeager*, "[t]here is no occasion for the law to intervene in every case where someone's feelings are hurt" and "[t]here must still be freedom to express an unflattering opinion." *Yeager*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666. Plaintiff's allegations of "shock, embarrassment, and shame," without <u>any</u> factual support, are insufficient to support a claim for intentional infliction of emotional distress.

Having failed to allege facts sufficient to support a cause of action for intentional infliction of emotional distress, Plaintiff's claim must fail.

**2. Plaintiff has alleged no real physical danger to himself or another.**

Plaintiff's claim for negligent infliction of emotional distress is inapposite to the facts presented in his Complaint. "Ohio case law has recognized negligent infliction of emotional distress only where the plaintiff is cognizant of real physical danger to herself or another." *King v. Bogner*, 88 Ohio App.3d 564, 569, 624 N.E.2d 364 (2nd Dist. Montgomery 1993), quoting *Criswell v. Brentwood Hosp.*, 49 Ohio App.3d 163, 165, 551 N.E.2d 1315 (1989). "Where there is no such cognizance, there can be no claim for negligent infliction of emotional distress." *Id*. As Plaintiff has alleged no physical danger to himself or another, this claim must fail.

**3. Plaintiff's claims arise from the same set of facts as his slander claim.**

Where a plaintiff's intentional infliction of emotional distress arises from the same facts as a defamation claim, the latter cannot survive when the former fails. *McGee v. Simon & Schuster,* 154 F. Supp.2d 1308, 1315-1316 (S.D. Ohio 2001) (citations omitted); *see also Vail,* 72 Ohio St.3d 279, 649 N.E.2d 182 (Since "the statements at issue are constitutionally protected speech, [the plaintiff's] claims for intentional infliction of emotional distress must also fail."). Given that Plaintiff's harm allegedly arises as a result of the "statements [Defendants] recklessly made about Plaintiff," this claim cannot survive and must be dismissed as a matter of law.

**D. This Court Must Dismiss Plaintiff's Retaliation Claim**

There is no tort claim for retaliation under Ohio law. Plaintiff alleges that Defendants removed him from the local board because he complained about some of the decision making, and because he questioned whether the Joint Boards were probably constituted. *Complaint*, ¶ 80. He calls his removal retaliatory. *Id*. He has stated no cause of action, because no cause of action exists.

## III. CONCLUSION

Plaintiff has failed to state a cause of action for his slander, false light, and negligent infliction of emotional distress, and retaliation claims, and failed to plead facts sufficient to state a plausible claim for relief for his claim for intentional infliction of emotional distress, as well as his claims for negligent infliction of emotional distress, slander, and false light. Accordingly, Defendants Gantt and Bergenkse respectfully request that the Court dismiss Plaintiff's Complaint.

Respectfully submitted,

/s/ *John C. Greiner*
John C. Greiner (0005551)
*Attorney for Defendant Bergenske and Defendant Gantt*
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 651-3836
E-mail: jgreiner@graydon.law

*Of Counsel:*

GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-6464
Fax: (513) 651-3836

9322656.2